UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM PATRICK MURPHY, <br><br> Defendant. | Case No. 20-mj-3006 (KAR) <br><br> Charging District's <br> Case No.  18-0417-17-CR-C-BCW |

## MEMORANDUM AND ORDER DENYING THE GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

Defendant William Patrick Murphy is charged in a third superseding indictment returned by a grand jury in the Western District of Missouri with one count of conspiracy to distribute marijuana (over 1,000 kilograms); one count of distribution of marijuana; one count of interstate travel in aid of racketeering; and one count of conspiracy to commit money laundering.  The government has moved for pre-trial detention on the grounds that there are no conditions of pretrial release that would assure the defendant's appearance as required or the safety of the community.  The government invokes the presumption that applies in drug cases where the potential sentence is ten years or more.  18 U.S.C. § 3142(e)(3)(A).  The defendant was arrested in Springfield, Massachusetts and invoked his right to a detention hearing in this district.  The court held an evidentiary hearing on the government's motion on January 16, 2020.  FBI agent Pasquale Morra testified.  Neither side introduced any exhibits.  The court had the benefit of a thorough pretrial services report.  At the conclusion of the hearing, the court took the government's motion under advisement.

The factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include the nature and circumstances of the offense charged; the weight of the evidence as to guilt; the history and characteristics of the accused, including family ties, history relating to drug or alcohol abuse, criminal history, record concerning appearances at court proceedings, financial resources and employment; and the nature and seriousness of the danger to any person or the community that would be posed by a release. *See* 18 U.S.C. § 3142(g). Even when the government invokes the presumption of detention, "[t]he burden of persuasion remains with the government to establish that no condition or combination of conditions will reasonably assure the appearance of the persons as required and the safety of any other person and the community." *United States v. Oliveira*, Criminal Action No. 16-10272-NMG, 2017 WL 690185, at *2 (D. Mass. Feb. 21, 2017). The presumption does not disappear and still carries weight in the court's determination.

As to the nature and circumstances of the offenses, the defendant is charged with being a courier in a sophisticated coast-to-coast drug trafficking organization selling high quality marijuana (DTO). He is alleged to have coordinated and assisted in the distribution of marijuana and collecting financial proceeds from buyers and remitting those proceeds to the DTO organizers. Agent Morra testified that the government's investigation of the DTO was initiated after a home invasion and murder in Missouri. The government introduced no evidence that Mr. Murphy was involved in the home invasion and murder or carried a weapon or engaged in any violent act in connection with the allegations in the indictment.

Information about the history and characteristics of the defendant comes primarily from the pretrial services report, supplemented by representations by counsel. The defendant is approximately 33 years old. He was born and raised in Springfield, Massachusetts and attended

college in Boston. Almost all members of his immediate family continue to reside in the greater Springfield area and were present in court to support him. The defendant is expecting the birth of his first child any day and lives with the child's mother. He would return to their home if released pending trial. The defendant worked as a manager at a local bar which has since closed and he reported to the Probation Department that he currently supports himself by gambling. The defendant's criminal history is notable for convictions for armed robbery while masked and the commission of related offenses in 2010, for which he was sentenced to seven years in state prison. His parole ended, apparently without violations, in June 2016.

In terms of the defendant's involvement in the DTO, Agent Morra testified that Mr. Murphy was stopped in the Sacramento airport in November 2018. When agents searched his bag after a canine alerted to it, the agents discovered $70,000 in cash. Agents also stopped the defendant in Missouri in September 2018 while he was driving a truck. He was found to possess $500,000 in cash. Agent Morro testified that reports indicated that Mr. Murphy was responsible for the distribution of marijuana and collection of receipts for the DTO in some eight to ten cities. There is no evidence that Mr. Murphy had cash or marijuana in his possession when he was arrested in January 2020.

1. Risk of Nonappearance.

The government argues that the defendant poses a risk of nonappearance primarily because of the scope of the DTO's activities, the amount of money it generated, and the fact that the government has not traced all of the DTO's assets. In the court's view, this contention does not outweigh the factors in Mr. Murphy's favor in terms of the risk of non-appearance. It is, by definition, hard to disprove a negative and the defendant, not surprisingly, cannot disprove the government's contention that some members of the DTO may have access to funds for which the

government has not accounted. This is, however, a 2018 case, and the government has had substantial opportunities to attempt to trace assets. There is no evidence the government recovered any money (or marijuana or firearms) when it arrested the defendant. There was no evidence that this defendant has been living on a scale incommensurate with relatively modest assets over the last few years and, therefore, no evidence that he has access to undisclosed DTO funds that might fund his flight. He is a life-long resident of Western Massachusetts and has very strong family ties in the area. He is expecting his first child, further strengthening his ties to the area. The defendant has known since February 2019, when John A. Pereira, an alleged customer of the DTO, was arrested, that federal law enforcement officers were investigating the DTO's activities. Mr. Murphy's attorney represented that Mr. Murphy had some further notice that his arrest might be imminent. He has not left the area. Further, a review of the docket in this case indicates that a substantial number of defendants were released pending trial (Dkt. Nos. 25, 48, 58, 74, 137, 146, 173, 239). As to the possible length of the sentence faced by the defendant, a point the government also stressed, the one defendant who has thus far been sentenced received a sentence of 24 months committed followed by three years of supervised release (Dkt. No. 183). Taking into account the recommendation for release in the pretrial services report, and conditions of supervised release that can be imposed, the court finds that the government has not proved by a preponderance of the evidence that there are no conditions of supervised release that will reasonably assure the defendant's future appearance in court.

2. Danger to the Community

The court also is not persuaded that the government has proved by clear and convincing evidence that there are no conditions of supervised release that will reasonably assure that the defendant does not pose a danger to another or the community. In connection with this factor,

the government pointed out that it began its investigation of the DTO in response to a home invasion and murder and that the crimes with which the defendant is charged are inherently dangerous to the community.  While this contention is entitled to weight, the court notes that the government acknowledged that there is no evidence this defendant was involved in the home invasion and murder and there is no evidence that any drugs, guns, or money were recovered when the government arrested him.  The court has given this contention weight in the conditions of supervised release imposed.  The court is further aware that, in 2010, Mr. Murphy was convicted of robbery while masked, which is a very violent crime, but there is no indication in his criminal history of violent criminal conduct after 2010.  It appears that the DTO at issue has been dismantled and there was no evidence from which an inference could be drawn that the defendant remains involved in illegal activities of the nature charged in the indictment at this time.  He reported no history of substance abuse disorder or alcohol abuse.  In these circumstances, the government has not shown by clear and convincing evidence that there are no conditions of supervised release that will reasonably assure that the defendant does not pose a risk of danger to another or the community if he is released on conditions pending trial.

A form of conditions of release for Mr. Murphy is attached hereto as exhibit 1.  The United States Marshal is ordered to keep Mr. Murphy in custody until a surety bond is posted and all other conditions of release, including installation of location monitoring equipment, are satisfied.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

Dated: January 21, 2020